**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>Albert R. Kuperman</u>

    v.                                  Civil No. 08-cv-513-SM

<u>Commissioner, New Hampshire
Department of Corrections, et al.</u>

**REPORT AND RECOMMENDATION**

Pro se plaintiff Albert R. Kuperman brings this action, pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA"), alleging violations of his rights under the First and Fourteenth Amendments to the United State Constitution and federal statutory law (document nos. 1 and 7-11).  He seeks injunctive, declaratory and monetary relief against the following defendants in their individual and official capacities: William Wrenn, Commissioner of the New Hampshire Department of Corrections ("NHDOC"); Richard M. Gerry, Warden of the New Hampshire State Prison ("NHSP"); Jim Daly, NHSP Chaplin; and NHSP corrections officers Britton and Samson.

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon

which relief may be granted.  See 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the reasons stated below, I find that Kuperman has alleged the following claims: (1) First Amendment claims alleging denial of free exercise of religion against Wrenn and Gerry; (2) First Amendment retaliation claims against Britton and Samson; (3) Fourteenth Amendment equal protection claims against Gerry; and (4) RLUIPA claims against Wrenn and Gerry.  I recommend dismissal of all remaining claims.  I further recommend that Kuperman's motion for subpoena be denied without prejudice to refiling at a later date should circumstances warrant renewal (document no. 5).

<h2 style="text-align:center;">Standard of Review</h2>

In reviewing a pro se complaint, this court must construe the pleadings liberally and in favor of that party.  See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by a plaintiff and the inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (explaining that all "well-pleaded factual averments," not bald

assertions, must be accepted as true). This review ensures that pro se pleadings are given fair and meaningful consideration. See Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir. 1988). I apply this standard in reviewing Kuperman's complaint.

## Background

Kuperman is currently incarcerated at the NHSP. As a practicing member of the Orthodox Jewish religion, he is required to strictly adhere to the practice of not trimming his beard. His religion ostensibly places great religious significance and meritorious value in wearing a full, untrimmed beard. Kuperman explained his religious beliefs and practices to the defendants and informed them of his wish to abstain from shaving. He further explained that the New Hampshire DOC Policy and Procedure Directive ("PPD") 7.71 (IV)(D) infringed on his religious practices.[1] While the record suggests that defendants granted

---

[1] PPD 7.17(IV)(D) permits shaving waivers and provides, in relevant part:

> Inmates declaring membership in recognized faith groups, and demonstrating a sincerely held religious belief in which the growing of facial hair is of religious significance may request a shaving waiver. If approved, the shaving waiver allows an inmate to maintain a 1/4 inch neatly trimmed beard. . . .

PPD 7.17(IV)(D).

Kuperman a religious shaving waiver, the waiver only permitted him to grow his beard to a length of 1/4 inch.  For religious purposes, Kuperman wishes to grow his beard beyond the 1/4 inch limitation and contends that it will not present a security risk or otherwise compromise the legitimate penological objectives of the NHSP.  To date, defendants allegedly have denied him the right to grow his beard beyond the 1/4 inch limitation, thereby abridging his right to freely exercise his religion and placing a substantial burden on his religious practices.

Kuperman further claims that defendants denied him equal protection when they permitted inmates confined in high security units to grow beards in excess of 1/4 inch in length while restricting Kuperman, who is confined in a medium security unit, to a beard length of 1/4 inch.  Lastly, he claims that defendants denied him canteen items and subjected him to disciplinary action in retaliation for his filing of this federal civil suit.  He now brings this action, alleging that defendants violated his rights under federal constitutional and statutory law.

## Discussion

I.   Section 1983 Claims

Section 1983 creates a cause of action against those who,

acting under color of state law, violate federal law.  See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  Because Kuperman's complaint alleges violations of federal constitutional and statutory law, his suit arises under Section 1983.

    A.   Free Exercise of Religion

Kuperman alleges that Wrenn and Gerry abridged his First Amendment right to freely exercise his religion.  It is well-established that convicted prisoners do not forfeit all constitutional protections by reason of their incarceration.  See Bell v. Wolfish, 441 U.S. 520, 545 (1979).  A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974); Bell 441 U.S. at 545 ("prisoners do not forfeit all constitutional protections by reason of their

conviction and confinement in prison."). The retained rights include the right to free exercise of religion. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citing Cruz v. Beto, 405 U.S. 319, 322 (1972)). Prisons must provide all inmates reasonable opportunities to exercise their religious freedom. See Cruz, 405 U.S. at 322 n.2.

Free exercise claims brought by prisoners are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (quoting O'Lone, 482 U.S. at 349). See also Shaw v. Murphy, 532 U.S. 223, 227-229 (2001). The Supreme Court has held that a prisoner's sincerely held religious beliefs must yield if contrary to prison regulations that are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); see also, Washington v. Harper, 494 U.S. 210, 224 (1990) (prison restrictions that implicate constitutional rights are judged by the reasonableness standard); O'Lone, 482 U.S. at 351-352 (the Constitution does not require the prison to sacrifice legitimate penological objectives to satisfy an inmate's desire to exercise his religion so long as an inmate is

not deprived of all forms of religious exercise).

Here, Kuperman alleges that he is a practicing member of the Orthodox Jewish religion which requires him to strictly adhere to the practice of not trimming his beard. As evidenced by grievance forms dated October 1, 2007 and October 17, 2007, he explained his beliefs to Gerry and Wrenn and informed them of the restrictions placed on his religious practices and his wish to abstain from shaving. Although defendants granted Kuperman a religious shaving waiver, he was only permitted to grow his beard to a length of 1/4 inch. Kuperman informed Gerry and Wrenn that the NHSP's grooming policy, PPD 7.71 (IV)(D), violated his Orthodox Jewish religious practices. To date, defendants allegedly have failed to remedy the problem or take sufficient corrective action. If true, these allegations may state cognizable claims under the First Amendment Free Exercise Clause against Wrenn and Gerry. Because the complaint fails to allege sufficient predicate facts in support of a First Amendment claim against Daly, I recommend dismissal of the claim against him.

B.   Retaliation

Construed liberally, the complaint alleges that Samson and Britton retaliated against Kuperman in reprisal for his exercise

of First Amendment freedoms.  To prevail on a retaliation claim, an inmate must show: (1) conduct which led to the alleged retaliation was constitutionally protected; (2) that he suffered some adverse action at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

As mentioned above, a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system, see Pell, 417 U.S. at 822, including the right to free exercise of religion, see O'Lone, 482 U.S. at 348 (citation omitted).  Prisoners also have a First Amendment right to petition the government for redress of grievances, and prison officials may not retaliate against prisoners for exercising that right.  See Shabazz v. Cole, 69 F. Supp. 2d 177, 197 (D. Mass. 1999).  See also Walker v. Thompson, 288 F.3d 1005, 1008-09 (7th Cir. 2002) (holding that inmates are entitled under the First Amendment to file grievances and lawsuits, and officers may not retaliate against them for exercising that right).

Here, Kuperman alleges that Samson denied him canteen items and Britton filed a disciplinary report against him, all in

8

retaliation for his filing of this federal law suit against the NHSP and for his challenges to the restrictions placed on his religious practices.  Thus, Kuperman alleges that defendants' actions were taken against him in reprisal for his exercise of First Amendment freedoms.  As a result of defendants' actions, he allegedly was issued a disciplinary report and charged with a minor disciplinary infraction and, therefore, suffered adverse consequences.  Accepting Kuperman's allegations as true, which I must do at this preliminary stage of the proceedings, I conclude that he has alleged the minimum facts necessary to state cognizable retaliation claims against Britton and Samson.

C.   Equal Protection

Kuperman alleges that while confined at the NHSP, he was discriminated against on the basis of his religion in violation of the Equal Protection Clause of the Fourteenth Amendment.  I liberally construe this claim to be brought against Gerry in his representative capacity as Warden of the NHSP.

The Equal Protection Clause of the Fourteenth Amendment mandates that similarly situated persons be treated alike absent a rational basis for doing otherwise.  See City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985)(citations omitted); accord Village of Willowbrook v. Olech, 528 U.S. 562,

9

564 (2000)(recognizing equal protection claim where plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment). In the prison context, the Equal Protection Clause of the Fourteenth Amendment forbids a state from arbitrarily treating one group of prisoners worse than another. See Anderson v. Romero, 72 F.3d 518, 526 (7th Cir. 1995). The Equal Protection Clause "requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest." May v. Sheahan, 226 F.3d 876, 882 (7th Cir. 2000). However, "[p]rison officials may differentiate based on legitimate penological concerns, such as security, and are accorded substantial deference in such matters." Davis v. Milwaukee County, 225 F. Supp. 2d 967, 980 (E.D. Wis. 2002)(citations omitted).

    Here, Kuperman alleges that while confined at the NHSP in a medium security unit, he was discriminated against on the basis of his religion and was treated worse than inmates who were confined in high risk units. Inmates confined in high risk units were permitted to grow beards to any length, while inmates in medium security units, like Kuperman, were restricted to a beard length of 1/4 inch. As a result, Kuperman claims, he was

subjected to a grooming standard that is more stringent than the standard for inmates in high risk units.  He appears to allege that defendants subjected him to unequal treatment on the basis of both his religion and his classification in a medium security unit.  The record is silent as to whether the alleged unequal treatment bore a rational relation to a legitimate penal interest.  For purposes of preliminary review, I conclude that Kuperman has alleged the minimum facts necessary to state a cognizable equal protection claim against Gerry.

    D.   RLUIPA

Construed liberally, the complaint in this action alleges that Wrenn and Gerry burdened Kuperman's religious practices under RLUIPA which, in certain circumstances, prohibits government infringement on the practice of religion.  See Mayweathers v. Newland, 314 F.3d 1062, 1065 (9th Cir. 2002). Under RLUIPA, a government is prohibited from imposing a substantial burden on a prisoner's "religious exercise" unless it can show that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc–1(a).  The phrase "religious exercise" is to be construed liberally to include belief and profession as well as the

performance of physical acts such as assembling with others to worship.  See Cutter v. Wilkinson, 544 U.S. 709, 720 (2005). "Unlike cases arising under the Free Exercise Clause of the First Amendment, this prohibition applies even where the burden on the prisoner 'results from a rule of general applicability.'"  Koger v. Bryan, 523 F.3d 789, 796 (7th Cir. 2008)(citing 42 U.S.C. § 2000cc-1(a)(1)-(2)).

Construed liberally, the complaint in this action alleges that Wrenn and Gerry implemented or enforced a prison grooming policy that restricted Kuperman from growing a beard beyond a 1/4 inch in length and, therefore, substantially burdened his religious practices.  If true, these allegations may state a cognizable RLUIPA claim against Wrenn and Gerry.  See Mayweathers v. Terhune, 328 F. Supp. 2d 1086, 1095 (E.D. Cal. 2004) (prison grooming policy prohibiting beards violated RLUIPA).  To the extent Kuperman intends to allege a RLUIPA claim against Daly, I conclude that he has failed to allege sufficient predicate facts and therefore recommend dismissal of such claim.

II.  Official Capacity Claims

Construed liberally, the complaint seeks injunctive and monetary relief for wrongs committed by defendants as state actors in their official capacities.  It is well-settled that the

Eleventh Amendment bars suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under Section 1983.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)(holding that neither a state nor its officials acting in their official capacities are "persons" under Section 1983). Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.

To the extent Kuperman brings official capacity claims for monetary relief against the state defendants, all of whom are employees of the NHDOC and NHSP, I recommend that those claims be dismissed.  On the other hand, official capacity actions against state actors for prospective injunctive relief are not treated as actions against the state and may be considered under Section 1983.  See Will, 491 U.S. at 71 n.10.  Thus, Kuperman is not barred from bringing claims for prospective injunctive relief against the defendants in their official capacities.

## Conclusion

For the reasons stated above, I find that Kuperman has alleged the following claims: (1) First Amendment claims alleging denial of free exercise of religion against Wrenn and Gerry; (2) First Amendment retaliation claims against Britton and Samson; (3) Fourteenth Amendment equal protection claims against Gerry; and (4) RLUIPA claims against Wrenn and Gerry.  I recommend dismissal of all remaining claims.  I further recommend that Kuperman's motion for subpoena be denied without prejudice to refiling at a later date should circumstances warrant renewal (document no. 5).

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, plaintiff must do so by filing an objection within ten (10) days of receipt of this report and recommendation, or by properly moving to amend the complaint.

Any further objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. §

636(b)(1); <u>Unauthorized Practice of Law Committee v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

                                                    _/s/ James R. Muirhead_
                                                 James R. Muirhead
                                           United States Magistrate Judge

Date: April 7, 2009

cc:   Albert R. Kuperman, pro se