UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Albert R. Kuperman,
    Plaintiff

    v.                                         Civil No. 08-cv-513-SM
                                               Opinion No. 2010 DNH 153
William R. Wrenn, Commissioner,
New Hampshire Department of
Corrections; Richard M. Gerry, Warden,
New Hampshire State Prison; Michael
A. Samson; and Steven E. Britton,
    Defendants

**O R D E R**

Albert Kuperman is an inmate at the New Hampshire State Prison ("NHSP"). He brought suit to challenge a prison regulation that prohibits an inmate from growing facial hair longer than 1/4 inch. See 42 U.S.C. § 1983. An orthodox Jew, Kuperman claims that the regulation violates his rights under: (1) the free exercise clause of the First Amendment to the United States Constitution; (2) the equal protection clause of the Fourteenth Amendment; and (3) the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq.[1] Before the court is defendants' motion for summary

---

[1] Kuperman originally asserted a retaliation claim against Michael Samson and Steven Britton. During discovery, he indicated his intention to withdraw that claim, (see Defs.' Mot. Summ. J., Ex. D), and he reiterated in his objection to summary judgment that he was no longer pursuing the retaliation claim (see Pl.'s Obj. to Summ. J., at 1).

judgment.  Kuperman objects.  For the reasons given, defendants' summary judgment motion is granted.

**Summary Judgment Standard**

Summary judgment should be granted when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' "  Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).  "Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion,' "  Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)), and "cannot rest on 'conclusory allegations, improbable inferences, [or] unsupported speculation,' "  Meuser, 564 F.3d at 515 (quoting Welch v. Ciampa, 542 F.3d 927, 935 (1st Cir. 2008)).  When ruling on a party's motion for summary judgment, a trial court "constru[es] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in [that] party's favor."

Meuser, 564 F.3d at 515 (citing Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002)).

**Background**

It is undisputed that Kuperman's religion requires men to refrain from trimming their beards. New Hampshire prison inmates are required to shave, but an exception to that general requirement is described in a Policy and Procedure Directive ("PPD") on the subject of Religious Programming and Diets. PPD 7.17(IV)(D) provides:

> Shaving Waivers: Inmates declaring membership in recognized faith groups, and demonstrating a sincerely held religious belief in which the growing of facial hair is of religious significance may request a shaving waiver. If approved, the shaving waiver allows an inmate to maintain a 1/4-inch neatly trimmed beard. No sculpting, shaping or selective shaving is allowed; all facial hair must be trimmed equally. If an inmate with a shaving waiver is found to have shaped his beard, he must shave clean and start again. . . .

(Defs.' Mot. Summ. J., Ex. C, at 2.) And, unrelated to religious preference, inmates assigned to special housing units within the prison are shaved by barbers once a week (the Secure Psychiatric Unit ("SPU") and the Residential Treatment Unit ("RTU")), or once every two weeks (the Special Housing Unit ("SHU")) — so, some inmates may possibly grow beards exceeding 1/4 inch in length. (Generally speaking, those inmates are closely confined and are not allowed even safety razors due to security concerns.)

3

Defendants say the regulation limiting the length of beards (allowed only under special circumstances) to 1/4 inch, promotes hygiene, safety, and security. (See Boyajian Aff. (document no. 27-2), ¶¶ 5-6.) That length allows correctional officers to identify inmates easily, prevents inmates from hiding contraband and weapons in beards, and minimizes the risk that an escaped inmate could quickly change his appearance after an escape. (See id. ¶ 5.) A grooming policy that allowed full beards, on the other hand, would strain prison resources and/or relations between inmates and staff by requiring the issuance of multiple identification cards and by requiring more frequent inmate searches. (See id. ¶ 6.) Moreover, such a policy would provide escaped inmates with a fast and simple way to dramatically alter their appearances. (See id.)

Kuperman claims that the regulation prohibiting beards longer than 1/4 inch violates his First Amendment right to the free exercise of religion, as well as his rights under RLUIPA. He also argues that the NHSP's uneven enforcement of its shaving requirement (i.e., tolerating longer facial hair while inmates in specialized housing units await weekly or biweekly shaving) violates his Fourteenth Amendment right to equal protection.

**Discussion**

Defendants move for summary judgment on all three of Kuperman's claims, supporting their motion with affidavits from Captain Charles Boyajian, unit manager of the SHU and the Close Custody Unit at the NHSP in Concord, and Lieutenant Paul Cascio, Lieutenant of Security for the SPU and the RTU at the NHSP in Concord. Kuperman has produced only a single exhibit, a one-page newsletter titled "Inmate Communications Committee," that includes a brief discussion of the NHSP shaving policy.

A. First Amendment Claim

Kuperman claims that Commissioner Wrenn and Warden Gerry are violating his First Amendment rights by enforcing PPD 7.17(IV)(D), and precluding him from growing a full beard, as required by his religion. Defendants counter that while the prison's beard-length restriction does impose on Kuperman's religious exercise, it is a reasonable restriction directly related to legitimate penological interests.

"[I]mprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment." Beard v. Banks, 548 U.S. 521, 528 (2006) (citing Turner v. Safley, 482 U.S. 78, 93 (1987); O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)). "But at the same time the Constitution sometimes permits greater restriction of

such rights in a prison than it would allow elsewhere." Beard, 548 U.S. at 528 (citation omitted).  Specifically, "restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response to such objectives." Id. (quoting Turner, 482 U.S. at 87) (internal quotation marks omitted).

> Turner . . . sets forth four factors relevant in determining the reasonableness of the regulation at issue.  First, is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it?  Second, are there alternative means of exercising the right that remain open to prison inmates?  Third, what impact will accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources generally?  And, fourth, are ready alternatives for furthering the governmental interest available?

Beard, 548 U.S. at 529 (citations and punctuation omitted).


Defendants do not address the Turner factors, but argue that the two affidavits they produced support a determination that the limitation on beard length in PPD 7.17(IV)(D) is reasonably related to several legitimate penological interests, such as helping guards to identify inmates inside the prison, making it more difficult for inmates to hide weapons or contraband, and preventing inmates from easily changing their appearances in the event they escape.  With respect to such "matters of professional judgment," the court "must accord deference to the views of

prison authorities." Beard, 548 U.S. at 530. "Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Id.

Like the plaintiff in Beard, Kuperman has not "offer[ed] any fact-based or expert-based refutation in the manner the [civil procedure] rules provide." 548 U.S. at 534. Thus, he has "failed to point to specific facts in the record that could lead a rational trier of fact to find in his favor." Id. at 536 (citation and internal quotation marks omitted). Accordingly, defendants, having proffered evidence sufficient to establish that the regulation is reasonably related to legitimate penological interests, evidence generally unrebutted by plaintiff, are entitled to summary judgment on Kuperman's First Amendment claim. As the record stands, there is a rational connection between the regulation and asserted penological interests justifying it; an alternative means of exercising the right claimed is available (a limited beard); allowing full beards would certainly adversely impact prison administration with respect to easy and accurate identification of inmates and control of contraband; and, no ready alternative for effectively serving the government's interest is apparent here.

B. Fourteenth Amendment Claim

In his Report and Recommendation, the Magistrate Judge construed Kuperman's complaint to be claiming that the Warden discriminated against him on account of both his religion and his classification status, in violation of the Equal Protection Clause of the Fourteenth Amendment. Specifically, he claims that he was not allowed to grow a beard longer than 1/4 inch while in a medium security unit, but inmates confined in high-security units were allowed to grow beards of any length. Defendants have countered with evidence, undisputed by Kuperman, that inmates in some high-security units, who are not allowed to possess razors, are shaved by barbers once a week or once every two weeks. Kuperman has offered no evidence tending to show that any inmate is permitted to grow a full untrimmed beard, or anything more than a two-week growth of facial hair. See Meuser, 564 F.3d at 515 ("Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer definite, competent evidence to rebut the motion . . .") (internal quotation marks and citation omitted). Moreover, defendants have offered a rational basis for allowing some inmates to go a week or two between shaves – the danger associated with allowing them to possess razors, and the resource limitations dictating time intervals between shaves by a barber. Defendants are entitled to judgment as a matter of law on Kuperman's Equal Protection claim.

C. RLUIPA Claim

Kuperman also claims that enforcement of 7.17(IV)(D) violates his rights under RLUIPA. Defendants counter that the beard-length restriction is a lawful imposition on Kuperman's religious freedom, and is the least restrictive means of furthering the state's compelling interest in maintaining prison safety and security.

That section of RLUIPA directed toward the religious freedom of incarcerated persons provides, in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> **(1)** is in furtherance of a compelling governmental interest; and
>
> **(2)** is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The court of appeals for this circuit recently explained that:

> [A] claim under RLUIPA includes four elements. On the first two elements, (1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial, the plaintiff bears the burden of proof. [42 U.S.C.] § 2000cc-2(b). Once a plaintiff has established that his religious exercise has been substantially burdened, the onus shifts to the government to show (3) that the burden furthers a compelling governmental interest and (4) that the

> burden is the least restrictive means of achieving that
> compelling interest.  <u>Id.</u>

<u>Spratt v. R.I. Dep't of Corr.</u>, 482 F.3d 33, 38 (1st Cir. 2007).
Regarding the third and fourth elements, "in passing RLUIPA,
Congress stated that [courts] should continue to give 'due
deference to the experience and expertise of prison and jail
administrators' in determining prison policy." <u>Id.</u> at 38-39
(quoting <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 717 (2005)).
"However . . . inadequately formulated prison regulations and
policies grounded on mere speculation, exaggerated fears, or
post-hoc rationalizations will not suffice to meet the act's
requirements." <u>Spratt</u>, 482 F.3d at 39 (citation and internal
quotation marks omitted).

    For purposes of summary judgment, defendants concede that
the beard-length regulation substantially burdens Kuperman's
religious exercise.  They argue, however, that the regulation
furthers a compelling governmental interest and is the least
restrictive means of achieving that interest.  Kuperman counters
that defendants have failed to identify any compelling
governmental interest served by the beard-length restriction and
that enforcing the restriction against him is not the least
restrictive means of furthering its objectives.  But Kuperman has
produced no evidence on this issue.

10

To meet their burden under the third element of Kuperman's RLUIPA claim, defendants must identify a compelling governmental interest and must also establish that the beard-length restriction furthers that interest.  See Spratt, 482 F.3d at 39 ("merely stating a compelling interest does not fully satisfy [the defendant prison's] burden on this element of RLUIPA; [the defendant] must also establish that prison security is furthered by barring [the plaintiff prisoner] from engaging in any preaching at any time").  Defendants have identified prison security as a compelling governmental interest, and so it is.  See id. at 39 (citing Cutter, 544 U.S. at 725 n.13).  They have also produced testimonial evidence from a senior NHSP correctional officer to the effect that a restriction on the length of inmate facial hair directly furthers institutional security in three ways: (1) by making it easier for correctional officers to identify inmates; (2) by depriving inmates of a means to conceal weapons or contraband; and (3) by depriving inmates of a way to quickly change their appearances.

Kuperman's principal response is that defendants have failed to advance any governmental interest to justify the beard-length restriction, and that they have produced no evidence on the issue.  That, of course, is simply incorrect.  Defendants have produced Capt. Boyajian's affidavit.  That affidavit is evidence, and at trial, Capt. Boyajian's testimony would be entitled to

substantial deference.  See Spratt, 482 F.3d at 38-39.  While Boyajian's affidavit may be somewhat thin, it is not nearly as deficient as the affidavit the court of appeals found wanting in Spratt.  See id. at 39-40.  Kuperman, on the other hand, has produced no evidence to counter Boyajian's affidavit and, as a consequence, has failed to establish a trialworthy issue of material fact regarding the third element of his RLUIPA claim. See Meuser, 564 F.3d at 515.

Kuperman fares no better on the fourth element.  "A prison 'cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.' "  Spratt, 482 F.3d at 41 (quoting Warsoldier v. Woodford, 418 F.3d 989, 999 (9th Cir. 2005); citing Murphy v. Mo. Dep't of Corr., 372 F.3d 979, (8th Cir. 2004); Casey v. City of Newport, 308 F.3d 106, 114 (1st Cir. 2002)). Capt. Boyajian's affidavit demonstrates that defendants have, in fact, considered the efficacy of less restrictive means to achieve the prison's security objectives.  Again, Kuperman has produced no evidence to create a trialworthy issue with respect to the least restrictive means element.  See Meuser, 564 F.3d at 515.  Of course, one might argue that a slightly longer beard could serve the state's legitimate interests as effectively, while accommodating plaintiff's religious obligations more

12

generously, but such modest degrees of difference are best left to the judgment of prison administrators. That is particularly so here, where the issue is not well-developed. Plaintiff has not suggested, and the court cannot envision, plausible and pragmatic lesser alternative means of meeting the prison's legitimate security concerns than a reasonable beard-length rule.

Because Kuperman has failed to produce evidence to counter that produced by defendants on either the third or fourth elements of his RLUIPA claim, defendants are entitled to judgment as a matter of law on that claim.

## Conclusion

For the reasons given, defendants' motion for summary judgment (document no. 27) is granted. The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 27, 2010

cc:  Nancy S. Tierney, Esq.
     Laura E. B. Lombardi, Esq.